<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHILD EVANGELISM FELLOWSHIP OF NEW JERSEY, INC., et al., | : | |
| | : | CIVIL ACTION NO. 02-4549 (MLC) |
| Plaintiffs, | : | |
| | : | **COUNSEL FEE OPINION** |
| v. | : | |
| STAFFORD TOWNSHIP SCHOOL DISTRICT, et al., | : | |
| Defendants. | : | |

<u>**COOPER, District Judge**</u>

The plaintiffs, Child Evangelism Fellowship of New Jersey, Inc. ("NJ-CEF"), and Child Evangelism Fellowship of New Jersey, Inc., Bayshore Chapter ("Bayshore-CEF"), prevailed on a claim for declaratory and injunctive relief, thereby establishing that the policy of the defendant Stafford Township School District ("Stafford") — prohibiting the plaintiffs from distributing or posting flyers at school — violated their rights under the First Amendment. <u>Child Evangelism Fellowship v. Stafford Twp. Sch. Dist.</u>, 233 F.Supp.2d 647 (D.N.J. 2002).[1] This decision was affirmed by the Third Circuit Court of Appeals on October 15, 2004. <u>Child Evangelism Fellowship v. Stafford Twp. Sch. Dist.</u>, 386 F.3d 514 (2004). CEF moves for attorney's fees and expenses.

---

[1] Bayshore-CEF acts on behalf of NJ-CEF. Hereinafter, the Court uses the abbreviation "CEF" when referring to the collective and individual actions of the plaintiffs.

(Dkt. entry no. 55.)  CEF seeks a total of $339,182.23 in attorney's fees and costs pursuant to 42 U.S.C. § ("Section") 1988.  (Pls. Amended Application ("Pls. Appl."), at ¶ 9.)  For the reasons stated below, the Court will award $207,403.05 in fees, together with $2,056.65 in costs and expenses, for a total of $209,459.70.

**BACKGROUND**

## I.   Litigation Overview

Evaluation of the reasonableness of any fee application must be based upon an awareness of the claims that were presented and the course of the litigation.  See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) ("The amount of the fee, of course, must be determined on the facts of each case.")  The Court will begin with an overview of the history of this litigation.

## A.   The Parties

CEF is a "Bible-centered, worldwide organization composed of born-again believers whose purpose is to evangelize boys and girls with the Gospel of the Lord Jesus Christ and to establish (disciple) them in the Word of God and in a local church for Christian living." Child Evangelism, 386 F.3d at 521.  CEF establishes clubs known as Good News Clubs (the "Clubs") at schools around the country.  Id.  The Clubs provide religious instruction to school-age children, whose parents grant permission, during after-school hours.  Id. at 521-22.

Stafford consists of four schools, two of which were at issue: (1) the Ocean Acres Elementary School ("Ocean"), attended by pupils in grades pre-Kindergarten through second, and (2) the McKinley Avenue Elementary School ("McKinley"), attended by pupils in the third and fourth grades. Id. at 518. Stafford maintained written policies on both the distribution of materials to pupils and the use of facilities by community groups and agencies. Id. at 519-21. Also, Stafford developed practices of allowing particular community and school-related organizations and individuals to (1) distribute materials to pupils through faculty (the "distribution forum"); (2) post flyers on school walls (the "school wall forum"); (3) post flyers on school bulletin boards (the "school-bulletin-board forum"); and (4) staff tables on Back-to-School Nights (the "Back-to-School-Night forum"). Id.

**B.    CEF's Requests to Stafford**

CEF requested permission in February 2002 to (1) use Stafford facilities at both Ocean and McKinley for after-school Club meetings, and (2) have faculty at both schools distribute flyers and permission slips to pupils. Id. at 522. Stafford's superintendent, in March 2002, approved CEF's request to use school facilities, but denied the distribution request, believing that this would violate the Establishment Clause of the First Amendment. Id.

3

CEF contacted Stafford again on May 17, 2002, and requested personnel to (1) post a new flyer on school bulletin boards; (2) distribute flyers and permission slips to pupils; (3) allow CEF to staff tables at Back-to-School Nights and disseminate materials, including permission slips, to parents attending the events; and (4) permit students to distribute CEF materials to other students on school grounds during the school day.  Child Evangelism, 233 F.Supp.2d at 652.  Stafford rejected CEF's requests on June 10, 2002, because it had not received CEF's original application and proof of insurance.  Id.  CEF sent these materials to Stafford on August 13, 2002.  Id.  Believing that Stafford failed to timely respond to this correspondence, CEF sent another letter to Stafford on September 9, 2002.  Id. Stafford responded on September 12, 2002, but did not offer a final decision on CEF's requests.  Id.  Because the Back-to-School Nights were scheduled for September 18 and September 24-25 at McKinley and Ocean, respectively, CEF sent a letter to Stafford on September 13, 2002, advising that CEF would seek immediate injunctive relief.  Id.

**C.   The Court's December 10, 2002 Memorandum Opinion & Order**

CEF filed a complaint on September 19, 2002, seeking a temporary restraining order ("TRO") and claiming that Stafford was violating its rights to (1) freedom of speech and the free exercise of religion under the federal and state constitutions,

4

and (2) equal protection under the federal constitution.  Child
Evangelism, 386 F.3d at 522-23.  After CEF brought the action,
Stafford's counsel advised it that Stafford had approved its
request to use the school facilities, but that its other requests
were denied because of, inter alia, "concerns about violating the
Establishment Clause."  Id. at 523.  The Court denied the TRO
application on September 24, 2002, but issued an order to show
cause as to why a preliminary injunction should not be issued.
Id.  After further proceedings, the Court granted CEF's motion
for a preliminary injunction.  Id.  The Court found that (1) CEF
was likely to succeed on the merits of its claims that Stafford's
exclusion of CEF from the distribution, school-wall, and Back-to-
School-Night fora was unconstitutional under the Free Speech
Clause, and (2) the distribution policy was unconstitutionally
vague.  Child Evangelism, 233 F.Supp.2d at 668.[2]  Accordingly,
the Court (1) granted the order to show cause as to CEF's request
for access to the distribution, school-wall, and Back-to-School-
Night fora (hereinafter collectively referred to as the
"permitted fora"), (2) denied the order to show cause as to CEF's
request for access to the school-bulletin-board forum, and (3)
preliminarily enjoined Stafford from enforcing any policy, whether

---

[2] The Court also held that CEF was not likely to prevail on
its claim that Stafford had engaged in viewpoint discrimination
in refusing to post Club materials on the school-bulletin-board
forum.  Child Evangelism, 386 F.3d at 523 n.7.

written or informal, that would prevent CEF from having equal
access to the permitted fora.  (Dkt. entry no. 19, 12-10-02 Ord.)

**D.   Stafford's New Policy**

Stafford adopted a new policy, at a meeting on December 12,
2002 (the "12-12-02 Meeting"), "to suspend distribution of all
flyers and postings in school buildings with the exception of
school business and referendum-related material until [Stafford]
reviews its policy" (the "New Policy").  (Dkt. entry no. 38, 8-
28-03 Mem. Op. & Ord., at 3-4.)  A CEF representative attempted
to deliver flyers to Stafford for distribution on December 16,
2002, but was told that the flyers would not be distributed due
to the New Policy.  (Id. at 4.)

Stafford sent a letter on December 19, 2002, (1) advising
parents and guardians about the New Policy, and (2) stating that
it implemented the New Policy, in part, to (a) "honor the
[Court's] decision without the consequences of a forum not
intended by [it]," and (b) allow it to investigate "alternative
ways to provide community information to its families."  (Id.)
Under the New Policy, Stafford denied requests for access to the
distribution and school-wall fora by various community
organizations that had previously participated in these fora.
(Id.)  However, Stafford approved distribution of flyers
promoting "Cooking with your Pre-K or Kindergarten Child" and
"Literacy Focused Activities for You and Your First and Second

Grader," both presented by the St. Francis Even Start Program. (Id. at 5.)[3]

Stafford also maintained a website — containing information about, inter alia, school policies and events — where it posted a flyer inviting fifth grade girls and their mothers to participate in an evening of cosmetology activities at the Ocean County Vocational School.  (Id.)[4]  The new-distribution forum also included flyers promoting (1) an event called the New Jersey Assessment of Skills and Knowledge, and (2) Stafford Township's Arbor Day Celebration.  (Id. at 5-6.)

**E.   The Court's August 28, 2003 Memorandum Opinion & Order**

CEF moved to enforce the preliminary injunction and for contempt on February 13, 2003, arguing that Stafford violated its Free Speech, Free Exercise, Establishment Clause, and Equal Protection rights by (1) excluding CEF from the website and new-distribution fora; and (2) instituting the New Policy in response to the December 2002 Opinion and CEF's request for access to the permitted fora.  (Id. at 6; Dkt entry no. 28.)  As such, CEF sought to enforce the 12-10-02 Order by requesting that the Court (1) declare null and void the New Policy, and (2) require Stafford to distribute and post CEF's flyers.  (8-28-03 Mem. Op.,

---

[3] The Court refers to Stafford's continued distribution of select materials as the "new-distribution forum."

[4] CEF did not seek access to the website forum in the 9-24-02 motion.

at 6.)  CEF further sought to (1) hold Stafford in contempt for violating the 12-10-02 Order, (2) file an amended complaint to plead retaliation, and (3) file an amended complaint alleging facts related to events occurring after the 12-10-02 Order. (Id.)

The Court issued a memorandum opinion on August 28, 2003, finding that Stafford did not violate CEF's Free Speech, Establishment Clause, Free Exercise, or Equal Protection rights by (1) excluding CEF from the website and new-distribution fora, or (2) instituting the New Policy in response to the December 2002 Opinion and CEF's request for access.  (8-28-03 Memo Op., at 11-19.)  Also, the Court concluded that (1) Stafford had not violated the 12-10-02 Order, and (2) CEF's proposed retaliation claim would not withstand a motion to dismiss pursuant to Rule 12(b)(6).  (Id. at 19-24.)  As such, the Court denied CEF's motion insofar as it sought to (1) enforce the 12-10-02 Order by declaring null and void the New Policy and requiring Stafford to distribute and post CEF's flyers; (2) hold Stafford in contempt for violating the 12-10-02 Order; and (3) file an amended complaint to plead retaliation.  (Id. at 25.)[5]

---

[5] The Court granted the motion insofar as it sought to file an amended complaint alleging facts relating to events occurring after the 12-10-02 Order.  (8-28-03 Mem. Op., at 24.)

**F.   The Third Circuit's Decision on October 15, 2004**

CEF had appealed the Court's December 2002 Opinion and Order to the Third Circuit Court of Appeals on January 9, 2003.  (Dkt. entry no. 23.)  The Third Circuit affirmed the Court's December 2002 Opinion and Order on October 15, 2004, and remanded the action "for the entry of permanent injunctive relief and such other relief as may be appropriate."  (Dkt. entry nos. 44, 46, 47.)[6]  The Court then entered judgment against the defendants and ordered that (1) Stafford has no constitutional obligation to distribute or post any community group materials or to allow any such groups to staff tables at Back-to-School Nights; however, Stafford is permanently enjoined that if it did establish such limited public fora it must treat CEF the same as other community groups regarding the distribution and posting of literature and participation at Back-to-School nights; (2) the costs of appeal in the amount of $274.00 are taxed against Stafford; (3) nominal damages of one dollar ($1.00) are awarded to CEF; and (4) CEF is the prevailing party and, as such, is directed to file its motion for counsel fees.  (Dkt. entry no. 50.)

---

[6] The Third Circuit amended its order and judgment on December 13, 2004, to indicate that it was affirming the Court's December 10, 2002 order.  (See Dkt. entry no. 47.)

9

## II.   Summary Of Claims And Objections

The components of CEF's claim, which totals $339,182.23, are
set forth in the margin.[7]  That total represents the combined
claim for counsel fees, costs, and expenses.[8]  CEF's claimed

---

[7] Amounts claimed with respect to fees and expenses of:
Center for Law & Religious Freedom ("Center")

|  |  |
|---|---|
| Attorney Gregory S. Baylor | $  4,730.00 |
| Attorney Nathan A. Adams IV | $184,261.00 |
| Attorney Kimberlee Wood Colby | $107,692.75 |
| Attorney Steven H. Aden | $  3,657.50 |
| Paralegal Lisa M. Crist | $ 14,791.20 |
| Paralegal Jesse L. Esbeck | $  9,345.00 |
| Paralegal Charles A. Barclay | $  1,227.60 |
| Paralegal Jonathan C. Crowe | $    253.80 |
| Advanced costs & expenses | $  1,782.65 |

Hartsough, Kenny & Chase

|  |  |
|---|---|
| Attorney Gregory J. Sullivan | $ 10,597.50 |
| Advanced costs & expenses | $    569.23 |

|  |  |
|---|---|
| Costs on appeal | $    274.00 |
| Total: | $339,182.23 |

[8] CEF's submissions on this fee application were as follows:
Application/Petition filed 11-4-05 (dkt. entry no. 55); Amended
Declaration of Gregory S. Baylor, Esq. dated 10-7-05 with
exhibits ("Baylor Decl."):  billing statements and curriculum
vitae (dkt. entry no. 56); Declaration of Kimberlee Wood Colby,
Esq. dated 10-3-05 with exhibits ("Colby Decl."):  billing
statements and curriculum vitae (dkt. entry no. 57); Declaration
of Michael S. Paulsen, Esq. dated 10-3-05 with Exhibit A
("Paulsen Decl."):  curriculum vitae (dkt. entry no. 58);
Declaration of Steven H. Aden dated 9-30-05 with exhibits ("Aden
Decl."):  billing statements and curriculum vitae (dkt. entry no.
59); Declaration of F. Michael Daily ("Daily Decl.") dated 10-4-
05 (dkt. entry no. 60); Declaration of Nathan A. Adams IV dated
10-6-05 with exhibits ("Adams Decl."):  billing statements and
curriculum vitae (dkt. entry no. 61); and Declaration of Gregory
J. Sullivan dated 10-3-05 with attached billing statement
("Sullivan Decl.") (dkt. entry no. 62); Aden Declaration dated 1-
11-06 with exhibits ("Aden Decl. II") (dkt. entry no. 65);
Declaration of Bruce Wood dated 1-13-06 ("Wood Decl.") (dkt.
entry no. 66).

attorney's fee figure is based upon hourly rates of $275.00 for attorneys from the Center, and $225.00 for Gregory J. Sullivan, Esq.[9]  Stafford challenges the amount of the claimed fees.  The Court discusses each of the disputed points below.

## DISCUSSION

### I.  Legal Framework

Under Section 1988 — in proceedings involving the alleged violation of federal constitutional or civil rights — "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  "A reasonable attorney's fee is one that compensates a lawyer for the fair market value of his time, experience, and effort." Hall v. Bor. of Roselle, 747 F.2d 838, 841 (3d Cir. 1984).  A reasonable fee is also one which is "'adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys.'" Student Pub. Int. Res. Group v. AT&T Bell Labs., 842 F.2d 1436, 1448 (3d Cir. 1988) ("SPIRG") (quoting S. Rep. No. 94-1011, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913).

---

Stafford's submissions on this fee application were as follows: Declaration of Arthur Stein, Esq. dated 12-19-05 ("Stein Decl.") (dkt. entry no. 63); Declaration of Ronald L. Meinders dated 12-16-05 with exhibits ("Meinders Decl.") (dkt. entry no. 63); and Declaration of Kelley Johnson, Esq. dated 12-19-05 with exhibits ("Johnson Decl.") (dkt. entry no. 63).

[9] Mr. Baylor's submission also describes services rendered by four paralegals from the Center.  The claimed hourly rate for the paralegals is $60.00.

The Third Circuit generally defers to the discretion of the district court in fixing the amount of fees and costs if the court (1) employs the correct standards and methods in reaching the decision, and (2) makes findings of fact that are not clearly erroneous.  See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, 426 F.3d 694, 703 n.5 (3d Cir. 2005); Loughner v. Univ. of Pitt., 260 F.3d 173, 177 (3d Cir. 2001); Abrams v. Lightolier Inc., 50 F.3d 1204, 1222 (3d Cir. 1995) ("[W]hen the trial court applies the correct legal standard, the court has discretion in determining the actual fees award.").  However, in making determinations the district court must perform a "positive and affirmative function in the fee fixing process, not merely a passive role."  Loughner, 260 F.3d at 178.  Fee requests must "be subjected to a thorough and searching analysis. . . . [I]t is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request."  Evans v. Port Auth., 273 F.3d 346, 362 (3d Cir. 2001) (emphasis in original).  The standards have been well-developed in a long series of decisions, and we will begin by setting forth the basic framework in the margin.[10]

_____

[10] There are two basic methods for calculating counsel fees: the percentage-of-recovery method and the lodestar method.  The former method is generally used in cases involving a common fund.  "The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery

method would provide inadequate compensation." <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 148 F.3d 283, 333 (3d Cir. 1998).  The parties do not dispute that the lodestar method, as it is generally used in civil rights cases, applies here.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley</u>, 461 U.S. at 433.  The district court should exclude hours that are not reasonably expended. <u>Id.</u>  Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. <u>Id.</u>  Further, the Court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." <u>Institutionalized Juv. v. Sec'y of Pub. Welfare</u>, 758 F.2d 897, 919 (3d Cir. 1985) (quoting <u>Hensley</u>, 461 U.S. at 440).  The Court also can deduct hours when the fee petition inadequately documents the hours claimed. <u>Hensley</u>, 461 U.S. at 433.  After determining the number of hours reasonably expended, the Court must examine whether the requested hourly rate is reasonable.  Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984).  Thus, the Court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. <u>Id.</u> at 895 n.11; <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  The Court, after determining the reasonable hourly rate, multiplies that rate by the reasonable hours expended to obtain the lodestar. <u>Rode</u>, 892 F.2d at 1183.  The lodestar is strongly presumed to yield a reasonable fee. <u>City of Burlington v. Dague</u>, 505 U.S. 557, 563 (1992).

The Court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained. <u>Hensley</u>, 461 U.S. at 434-37.  This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims. <u>Id.</u> at 436. The court may also adjust the lodestar upward for quality of representation but "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" <u>Blum</u>, 465 U.S. at 899.

13

The party seeking counsel fees has the burden to prove that the request for attorney's fees is reasonable.  To meet this burden, the fee petitioner must "submit evidence supporting the hours worked and the rates claimed." Hensley, 461 U.S. at 433. Hours that would not generally be billed to one's own client are not properly billed to an adversary. Id. at 434.  The opposing party then has the burden to challenge the reasonableness of the requested fee, by affidavit or brief, with sufficient specificity to give notice. Bell v. United Princeton Props., 884 F.2d 713, 715 (3d Cir. 1989).  The Court cannot "decrease a fee award based on factors not raised at all by the adverse party." Id. at 720; Rode, 892 F.2d at 1183.  Likewise, the party seeking any lodestar adjustment has the burden of proving that an adjustment is necessary.  Id.  However, the party opposing the fee petition does not have a burden of disproving the reasonableness of the requested fee.  See Loughner, 260 F.3d at 179 ("No such rigid burden shifting is established in our cases.").  Rather, the Court has the obligation to "evaluate the petition in light of the objections." Id.  "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Rode, 892 F.2d at 1183.

**II.   Calculating The Lodestar Figure**

**A.   Hours Reasonably Expended by Counsel for CEF**

The Court begins this methodology by determining the hours reasonably expended on the litigation.  <u>Hensley</u>, 461 U.S. at 433. In making that determination, the Court must consider a party's objections to particular time charges and make findings on the hours to be included in the lodestar.  <u>Pub. Int. Res. Group v. Windall</u>, 51 F.3d 1179, 1189 (3d Cir. 1995) ("<u>PIRG</u>").  The Court reviews the time charged, decides whether the hours stated were reasonably expended for each of the particular purposes described, and then excludes those challenged hours that are "excessive, redundant, or otherwise unnecessary."  <u>Id.</u> at 1188 (quoting <u>Hensley</u>, 461 U.S. at 433-34).  The Court has grouped Stafford's objections into categories as follows.

1.   Stafford's Arguments that the Court Should Deny CEF's Application in its Entirety

Stafford contends that the Court, despite concluding that CEF is a "prevailing party," should deny the application in its entirety because it is grossly excessive.  (Defs. Br., at 5-6.) Specifically, Stafford argues that the Court should deny the fee request in its entirety because (1) CEF did not bring the action in good faith, but rather as a "premature" test case; (2) CEF did not submit a proper application for fees; (3) the Center did not exercise proper billing judgment in light of its expertise and experience; (4) CEF refused to negotiate a reasonable settlement

of the amount of fees in good faith; (5) CEF's application exceeds the fee request in similar cases; and (6) CEF is seeking a similar amount in fees in a case in Maryland.  (Defs. Br., at 5-28.)

In support of its contention, Stafford relies on Graveley v. City of Phila., No. 90-3620, 1998 WL 476196 (E.D. Pa. Aug. 12, 1998), which concluded that "[a] fee request may be denied entirely where the request is unreasonable or so excessive it shocks the conscience of the court.  If a reasonable award is granted in light of an outrageous request, there may be little deterrent to making excessive claims."  Id. at *13 (citing Fair Housing Council of Greater Wash. v. Landow, 999 F.2d 92 (4th Cir. 1993); Brown v. Stackler, 612 F.2d 1057 (7th Cir. 1980)). However, Stafford's reliance of Graveley is misplaced because despite concluding that the request for fees "shock[ed] the conscience of the court," the Graveley court did not deny the fee request in its entirety.  Id.

Stafford also relies on Brown v. Stackler, 612 F.2d 1057 (7th Cir. 1980), which explained that "denial is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees."  Id. at 1059.  However, in Brown, the court

16

> found that the number of hours claimed to have been spent
> by plaintiff's attorneys was not only grossly excessive
> but "simply absurd."  The court believed the claim had
> been exaggerated "probably on the order of eight times"
> and it therefore concluded that the only proper course
> "[was] to deny fees altogether."

Hall, 747 F.2d at 841 (interpreting decision in Brown).[11]

In opposing the fee application, Stafford does not appear to argue that attorneys for the Center billed for hours that were not worked.  Rather, Stafford's opposition focuses, inter alia, on the Center's exercise (or alleged lack thereof) of "billing judgment."  Stafford has not shown that CEF's request for fees is "grossly excessive" under Brown and Hall.  Nonetheless, for sake of completeness, the Court will evaluate each of Stafford's specific arguments in turn.

a.   CEF did not bring this action in good faith

Stafford argues that CEF did not bring this action in good faith, but as an "orchestrated[,] . . . premature 'test case.'" (Defs. Br., at 6.)  Stafford alleges that CEF "targeted [it] and a few other districts for distribution and access to the fora of elementary schools in light of the [United States Supreme Court's decision in Good News Club v. Milford Cent. Sch., 533 U.S. 98 (2001)]."  (Defs. Br., at 7.)  Also, Stafford claims that it was

---

[11] In Hall, the court explained that although counsel "had undoubtedly expended the hours claimed but that in some instances they spent more time on various tasks than was reasonably necessary," the district court did not abuse its discretion in refusing to apply Brown to the fee request.  747 F.2d at 842.

"at the top of the list." (<u>Id.</u>)  Moreover, Stafford contends

that CEF (1) "blind-sided" it by filing suit before it had an

opportunity to render a final decision regarding CEF's requests,

and (2) failed to provide the required proof of insurance until

the day of the hearing on the order to show cause.  (<u>Id.</u> at 7-9.)

Stafford's arguments are insufficient to warrant the outright

denial of attorney's fees.

Stafford's argument that CEF "targeted" it is unsupported by

the evidence of record.  First, Stafford attempts to imply a

negative inference to the Center's stated goal of "focus[ing] on

strategic, 'test case' lawsuits designed to set important

precedents in the religious liberty area." (Johnson Decl., at ¶

26 & Ex. K.)  As the Court has previously explained, at the time

of the inception of this case, courts were "split on the issue of

whether a public <u>elementary</u> school violates the Establishment

Clause by providing a religious organization access to the types

of fora addressed here." <u>Child Evangelism</u>, 233 F.Supp.2d at 633

(emphasis in original).  As such, and as further evidenced by the

Third Circuit's conclusion that Stafford violated the First

Amendment by prohibiting CEF from the fora at issue, CEF had a

reasonable basis to bring this action.  Stafford provides

insufficient support for its assertion that this was a case where

CEF "precipitated . . . an irrational, deliberate scheme to

involve [Stafford] in some type of litigation." (Defs. Br., at 6

(citation omitted)).

Stafford's attempt to portray itself as a "target" because
it was allegedly "at the top" of the Center's list is
disingenuous.  Stafford, in support of this contention, points to
the Center's 2002 Annual Report listed on the website of the
Christian Legal Society.  (Johnson Decl., at ¶ 26 & Ex. K.)  On
the 2002 Annual Report, under the heading "Litigation," the first
entry is the CEF and Stafford litigation.  (Id.)  Other than the
fact that this entry is at the top of the page, there is nothing
on the website to indicate that Stafford was at the top of some
form of "hit list" or "top priority list" that would permit the
Court to characterize the listing as anything other than what it
is, i.e., just a list of ongoing litigation.

Stafford's argument that CEF's action was "premature" also
is insufficient to warrant the denial of attorney's fees.
Although Stafford had not rendered a final decision concerning
the use of facilities or distribution requests, the Court
addressed the ripeness of the request for a temporary restraining
order ("TRO") by denying CEF's request.  (9-24-02 TRO Hearing;
dkt. entry no. 5.)  The Court explained at the TRO hearing that
it had received incomplete and inadequate information from CEF,
and that the "emergency" was largely of CEF's own making.
(Id.)[12]  Therefore, to the extent CEF's actions were "premature,"

---

[12] The Court, despite Stafford's assertion to the contrary,
did not state that "CEF's claimed 'emergency' was a self-created,
irrational [and] deliberate scheme to involve [Stafford] in . . .
litigation."  (Defs. Br., at 8.)

the Court denied the TRO.  Nonetheless, Stafford appears to argue that the Court should deny awarding attorney's fees simply because of the denial of CEF's request for temporary relief. Stafford has failed to show that the denial of temporary relief justifies denying any award of fees.  Further, even after receiving CEF's requisite proof of insurance (whether Stafford received it on the day of the TRO hearing is of no consequence), Stafford refused to provide CEF access to the fora, which required CEF to seek and obtain preliminary injunctive relief. Therefore, Stafford has not shown that CEF brought this action in bad faith.

b.   CEF did not submit a proper application

Stafford contends that the Court should deny the application because CEF failed to submit a proper application.  (Defs. Br., at 10.)  Stafford asserts that the application does not "conform to the procedural requirements regarding font size and, as a result, presumably page length."  (Id.)[13]  Also, Stafford argues that the Center's time entries are "intermingled, duplicative and vague."  (Id. at 11.)  Stafford's arguments are insufficient to warrant the denial of attorney's fees.

---

[13] Stafford also notes, presumably in support of its argument that the application contains technical violations, that the Clerk's Office issued notifications regarding deficiencies, which required CEF to re-file documents.  (See Unnumbered dkt. entries btw. nos. 53 & 54.)  This is immaterial to resolving the issue of the sufficiency of the application.

20

Stafford's contention regarding CEF's alleged technical violation of the Local Civil Rules ("Local Rule[s]") is wholly without merit.  Local Rule 54.2 provides, _inter alia_, that attorneys seeking compensation for services rendered must submit an affidavit with the Court.  _Id._  Local Rule 7.2 provides the procedural "form" requirements for affidavits and briefs submitted in this District.  Although Local Rule 7.2 discusses page limits, page size, margins, and font sizes, nowhere in the Rule does it indicate that exhibits must follow these requirements.[14]  The Center's time entries are attached as Exhibit "A" to the application.  (Pls. Appl.)  As such, Local Rule 7.2 does not apply to the format of the Center's time entries.

The Court addresses secondly, Stafford's complaints concerning the form and content of the Center's time entries.  As the applicant, the Center is responsible to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  _Hensley_, 461 U.S. at 437.  Also, "[a] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"  _Rode_, 892 F.3d at 1190 (quoting _Pawlak v. Greenawalt_, 713 F.2d 972, 978 (3d Cir. 1983)).

---

[14] Although Stafford states that the "application" does not meet procedural requirements, the Court interprets this argument as referring solely to the Center's time records as the application itself is five pages in length and appears to meet the requirements of Local Rule 7.2.

21

Moreover, the petition must provide

> some fairly definite information as to the hours devoted
> to various general activities, e.g., pretrial discovery,
> settlement negotiations, and the hours spent by various
> classes of attorneys, e.g., senior partners, junior
> partners, associates.  However, it is not necessary to
> know the exact number of minutes spent nor the precise
> activity to which each hour was devoted nor the specific
> attainments of each attorney.

Washington v. Phila. County Ct. Com. Pl., 89 F.3d 1031, 1037-38

(3d Cir. 1996) (citation and internal quotations omitted).

As to entries being vague and intermingled, the Center's

time entries are not, in all instances, specific as to the time

spent on a specific task.[15]  In some instances, the time records

identify multiple tasks performed on a given day, but with no

specific time reference to how long the individual spent working

on each task described.[16]  Further, some of the time records are

vague.[17]  However, the majority of the Center's time entries,

---

[15] The Court addresses infra Stafford's argument that some
of the time entries are "duplicative."

[16] For example, on October 10, 2002, Nathan Adams's time
entry states: "Mtg w. paralegal LMC and K. Colby re: call to
Municipal Alliance; follow-up meeting; second call to MA;
modified potential draft declaration; drafted language for fax
cover sheet; e-mail to co-counsel and telecon re: discovery."
(Dkt. entry no. 55, Ex. A, at 2.)  For all of this work, Adams
bills 2.6 hours.  (Id.)

[17] For example, from March 27, 2003, through March 31, 2003,
Nathan Adams worked on drafting a "reply brief." (Dkt. entry no.
5, Ex. A, at 2.)  The Court has been unable to find — as
reflected on the docket here and before the Third Circuit — a
reply brief submitted by CEF on or around that time.

which are dated and specifically quantified as to the individual
and time spent, do meet the minimum criteria for specificity.[18]

The Center did not, however, submit a proper application
with respect to the fees sought by Gregory Sullivan.  Sullivan's
affidavit includes a computerized printout of time entries, but
there are no specific entries as to time spent on a particular
task, or the basis of any costs or expenses.  Therefore, the
Court will deny that part of the application seeking fees and
expenses for Sullivan's work.

c.   The Center did not exercise proper billing judgment

Stafford argues that the Center "flagrantly disregarded its
duty to use billing judgment" because, inter alia, it (1) made
"no redactions in the attorneys' bills . . . and only token
eliminations to other staffs' entries," and (2) took as much time
to litigate the case as "it took the neophyte school board
attorneys."[19]  (Defs. Br., at 11, 15.)  Stafford points out that

_____

[18] Stafford also argues that CEF has failed to submit proper
proofs for a 1.25 enhancement of the loadstar.  The Court will
address this issue later in this opinion.

[19] Stafford, concerning the redaction (or lack thereof) of
hours in the Center's bills, argues also that it should have
eliminated time spent on (1) "its multiple amendments of
pleadings, certifications and motions/applications;" (2) "its
unsuccessful motion for enforcement and sanctions;" (3)
"monitoring the Board of Education's policy after this Court's
decision and the Board of Education's closure of the fora;" and
(4) "the two motions for summary judgment which [the Center]
abandoned and never filed."  (Defs. Br., at 11-12.)  The Court
addresses these arguments infra and, therefore, will discuss the
Center's "billing judgment" in that part of the opinion.

its counsel — without "significant" experience with the relevant legal issues — was able to litigate the case in 1,550 hours. (Id. at 16.)  As such, Stafford contends that given the Center's (1) expertise in religious expression law, (2) access to "tremendous resources" including 4,500 volunteer members who are attorneys, judges, law professors, and law students, and (3) participation, including writing amicus briefs in several of the most applicable cases (to the litigation), it should have been able to handle the case in at least half the time of defense counsel, or one quarter of the time it claims to have billed. (Id. at 17-18.)

Stafford has not demonstrated that a comparison of the hours spent by the parties in this matter justifies an outright denial or significant reduction of fees.  Both parties spent approximately the same number of hours litigating the case.[20] Further, as to redactions in the Center's time sheets, Stafford appears to have referenced a different set of time sheets than those that were provided to the Court for review.  The time sheets provided with the application for fees includes redactions of both attorney and paralegal time.  (Pl. Appl.)

---

[20] Although Stafford's counsel claims that it billed 1,550 hours on the case, it did not attach any billing records for the Court's review.  (Johnson Decl., at ¶ 10.)  Nonetheless, for purposes of this opinion, the Court assumes that the asserted number of hours spent is accurate.

d.   The Center's alleged refusal to negotiate a reasonable
     settlement in good faith

Stafford argues that the Court should deny the fee request in its entirety because the Center failed to negotiate a reasonable settlement of the fees in good faith.  (Defs. Br., at 18.)  Stafford contends that (1) the March 31, 2005 and September 27, 2005 correspondence from Aden "did not even attempt to negotiate the issue of fees in good faith," (2) the Center's demand of $364,990.99 was so "ludicrous as to render serious negotiations impossible," (3) the Center provided "no indication that [it was] willing to reduce [its] demand in order to open negotiations," (4) the format of the Center's time entries, which caused Stafford's counsel "significant" time to review and analyze, "paralyzed the desire to engage in negotiations," and (5) the passage of six months — presumably from the March 31, 2005 to the August 23, 2005 correspondence — "did nothing to soften [the Center]'s intractable position that its demand was 'reasonable.'"  (Defs. Br., at 18-20.)  In response, CEF alleges that it did attempt to negotiate a fee settlement in good faith, but that Stafford was unresponsive to the requests to negotiate.  (Pls. Reply Br., at 6-7.)  The Court finds that Stafford has not shown that CEF failed to negotiate a fee settlement in good faith.

CEF, in a letter dated February 14, 2005 (the "February 14 Letter"), and apparently in response to a phone conversation with

Kelley Johnson, one of Stafford's counsel, provided an estimate of attorney's fees at $357,367.00. (Aden Decl. II., at ¶ 15 & Ex. E.)  The February 14 Letter also indicates that CEF was willing "to consider any reasonable proposal [Stafford] might wish to suggest with the purpose of bringing this litigation to a close." (Id.)  Neither party indicates that they communicated with each other — by letter or otherwise — concerning the estimate of fees, between the February 14 Letter and CEF's next letter to Stafford, dated March 31, 2005 (the "March 31 Letter").

CEF provided a summary of its fees and costs and supplied Stafford with supporting documentation, i.e., their time records, in the March 31 Letter. (Stein Decl., at ¶ 6; Johnson Decl., at ¶ 5 & Ex. C; Aden Decl. II, at ¶ 16 & Ex. F.)  The March 31 Letter indicated that CEF was seeking fees and costs totaling $364,990.99. (Id.)  At the bottom of the March 31 Letter, CEF stated that it was "willing to discuss a negotiated fee award in this case." (Id.)  This statement belies Stafford's argument that CEF "gave no indication that [it was] willing to reduce [its] demand in order to open negotiations." (Defs. Br., at 19.) The record reflects that CEF attempted to open discussions, but in fact, did not receive a response from Stafford.

Stafford's other counsel, Arthur Stein ("Stein"), explains that "[g]iven the tone of the correspondence [in the March 31 Letter] and the lack of any effort by [the Center] to organize

26

the 15 separate sets of billing statements which were quite vague
and intermingled, _my impression_ was that serious discussions of a
more balanced sum were not likely to occur." (Stein Decl., at ¶
7 (emphasis added).) Therefore, Stein's interpretation of the
"tone" of the correspondence and the organization of the billing
statements, rather than CEF's own statements indicating a
willingness to negotiate, caused Stafford to conclude that
"serious discussions" regarding the fees could not occur.
Moreover, because Stafford spent "several months" thereafter
"trudg[ing]" through CEF's bills in an attempt to distinguish
between compensable and non-compensable work, Stafford claims
that this "paralyzed [its] desire to engage in [settlement]
discussions." (Defs. Br., at 19-20; Stein Decl., at ¶ 8.) As
such, it appears that Stafford did not contact CEF concerning the
request for fees and costs, nor did it open a dialogue with CEF
concerning negotiating the amount of fees. Although the Court
understands the desire to review and analyze the fee request to
conduct informed and productive negotiations, the fact that
Stafford did not contact CEF at all for approximately five months
was Stafford's own doing.[21]

After not receiving any communication from Stafford
(including any counteroffer), CEF sent Stafford a letter dated

---

[21] The Court recognizes that CEF also did not contact
Stafford during this period but, after receiving no contact from
Stafford, CEF was not required to negotiate against itself.

August 23, 2005 (the "August 23 Letter"), stating:

> Because there is no dispute that CEF is entitled to a fee
> award of some kind, we remain hopeful that a negotiated
> fee award may be possible.  It makes little sense for us
> to go to the time and expense of briefing an attorneys'
> fee motion when the question of fees may be resolved by
> simple negotiation or a mediation or arbitration process.
>
>      . . . [W]e sent you a letter and billing records
> supporting a fee award in the amount of $364,990.99.  We
> continue to believe this amount is reasonable. . . .
>
>      With the October 4, 2005, deadline for filing our
> motion for counsel fees and expenses a little over a
> month away, it would [be] wise to begin the negotiation
> process as soon as possible.  Please contact us at your
> convenience to do so.

(Aden Decl. II, at ¶ 17 & Ex. G.)  Again, although CEF stated

that they thought $364,990.99 was reasonable, it expressly

indicated a willingness to negotiate the fee award.  However,

after receiving the August 23 Letter, Stein believed that his

"concerns regarding [CEF's] position on the fee issue [i.e., that

"serious discussions of a more balanced sum were not likely to

occur"] were confirmed by [CEF's] statement that '[it]

continue[s] to believe . . . [$364,990.99] is reasonable.'"

(Stein Decl., at ¶¶ 7, 10.)

     Based on its interpretation of CEF's letters, Stafford again

did not immediately respond to CEF's "overture" to negotiate the

fee award.  Instead, Stafford asked CEF to provide information as

to "the fee arrangements among [the Center], local counsel and

[CEF]."  (Stein Decl., at ¶ 11.)  CEF responded to this request

in a letter dated September 27, 2005 (the "September 27 Letter"),

28

which provided in part as follows:

> It is unclear to me why copies of our retainer agreements and fee schedules are relevant to settlement negotiations regarding the attorneys' fees and costs in this case.  We have no objection to informing you that our legal services were rendered to our clients without charge. . . .

> Before exploring the possibility of mediation or arbitration in any greater depth, we continue to believe it would be beneficial to engage in more informal negotiations in the interest of saving time and money costs associated with these processes.

(Johnson Decl., Ex. P.)

CEF continued, in the September 27 Letter, to express its willingness to negotiate a fee award and informed Stafford that it represented CEF without charge.  Nonetheless, Stein characterized the contents of the September 27 Letter to the Court as not providing the information requested and "now suggesting that there were impediments to resolution by mediation or arbitration."  (Stein Decl., at ¶ 12.)  The Court finds that this is a gross misreading of the September 27 Letter.  Nowhere in the September 27 Letter does CEF indicate that there is an "impediment" to mediation or arbitration.  Rather, CEF suggests informal discussions to save both parties money.  Also, CEF informed Stafford that it represented CEF without charge.  As such, CEF's alleged failure to provide the requested information was not an "impediment" to Stafford discussing the requested fee award.  Furthermore, Stafford has not shown that it indicated to

CEF that it was interested in mediating or arbitrating the fee award.

The Court, after reviewing the above correspondence between the parties and the assertions by counsel, finds that there is no showing to suggest that (1) CEF was unwilling to discuss a negotiated fee award, or (2) that CEF somehow acted in bad faith. To the contrary, any "impediments" to a good faith fee negotiation were caused by Stafford.  We reject Stafford's contention that the Center's continuing representation as to the amount of a reasonable fee somehow demonstrated bad faith.  CEF merely set a starting point from which to negotiate.  However, Stafford did not attempt to make a counteroffer or otherwise discuss the requested fee.  As such, the Court will not  reduce or deny the fee application because Stafford has not demonstrated bad faith on the part of CEF.

e.   CEF's application exceeding fee awards in other cases

Stafford argues that the Court should reduce or deny the fee request because of a comparison to other fee awards in "similar" cases.  (Defs. Br., at 20.)  Stafford points to <u>Wigg v. Sioux Falls School District</u> in support of its contention  (<u>Id.</u>)[22]  In

---

[22] Stafford also asserts that "[u]pon information and belief, plaintiff in <u>Hills v. Scottsdale School District</u>, 329 F.3d 1044 (9th Cir. 2003), agreed to accept $142,000 from the defendant-school district in payment of its fees."  (Defs. Br., at 23 & n.8; Johnson Decl., at ¶ 40.)  The Court will not consider that information here, as Stafford has failed to provide any supporting documentation for the assertion that the plaintiff

Wigg, the plaintiff — an elementary school teacher — sought to participate in the Clubs in, among other places, the school building in which she taught.  382 F.3d 807, 810-11 (8th Cir. 2004).  Stafford explains that the Wigg litigation involved, inter alia, "supplemental briefing of the complaint seeking a preliminary injunction, depositions of six individuals, . . . a motion for summary judgment, an appeal and cross-appeal with briefs by both parties, . . . [and] oral argument before the [Eighth] Circuit."  (Defs. Br., at 21-22; Johnson Decl., at ¶ 36 & Ex. L-1.)

    Wigg's counsel claimed 690 hours on the case and sought fees and costs in the amount of $165,720.09.  (Johnson Decl., Ex. L-1 & L-3; Wigg's Br. in Supp. of Mot. for Atty's Fees & Costs, 14-15.)  The Eighth Circuit reduced the fee request and awarded $123,894.59 in fees and costs.  (Johnson Decl., Ex. L-2; Eighth Circuit Order dated 12-03-04.)  Therefore, Stafford contends that the comparison of the 690 hours and approximately $165,000.00 claimed by Wigg counsel with the 1,574 hours and approximately $338,000.00 sought by CEF in this case demonstrates that CEF did not exercise billing judgment.  Despite the large disparity between the number of hours worked and the fees sought in the two matters, the Court finds that Stafford has not shown that the

_____

in that case agreed to $142,000 in fees, or the basis for such an agreement.

comparison of this case with Wigg demonstrates that CEF did not exercise billing judgment, based on the record in this case.

f.  CEF's application for fees in a Maryland case

Stafford argues that the "outrageousness" of the fee application here is further illustrated by the Center's fee application — also on behalf of CEF — in a case brought against the Montgomery County School District ("MCSD") in federal court in Maryland (the "Maryland Court"), CEF v. Montgomery County School District (the "Maryland Action").  (Defs. Br., at 25-26.) Specifically, the defendants argue that the application for fees in the Maryland action demonstrates CEF's bad faith here because the plaintiffs were seeking approximately $405,000 in fees "from [MCSD] for litigating the exact same issue and re-using the work they produced in this case."  (Defs. Br., at 25; Johnson Decl., Ex. N.)  The Court finds that application for fees in the Maryland Action has little relevance to the fee application here and, thus, will not deny or reduce the fee request based on the fees obtained in Maryland.

CEF brought the Maryland Action on January 17, 2003, approximately one month after the Court granted CEF's request for preliminary injunctive relief against Stafford.  (Johnson Decl., Ex. N.)  The Maryland Court denied CEF's motion for a preliminary injunction to obtain access to MCSD's take-home flyer forum.  373

F.3d 589, 592-93 (4th Cir. 2004).[23]   The Fourth Circuit reversed
on June 30, 2004, concluding that CEF's access to the take-home
flyer forum would not violate the Establishment Clause.  Id. at
602.  The MCSD case is currently on appeal again with the Fourth
Circuit.

    The Maryland Court permitted CEF to request attorney's fees
and held a hearing on the request on November 21, 2005.  (Aden II
Decl., at Ex. D.)  At the hearing, the parties agreed that any
fee award would be limited to the time spent from inception of
the investigation of the lawsuit until the Fourth Circuit's
decision on June 30, 2004 (the "Relevant Period").[24]  (Aden II
Decl., at Ex. D. & p. 23-25, 38.)  Therefore, CEF's request for
fees was reduced from $405,408.48 to approximately $271,000.00.
(Id. at 36.)  Moreover, although leaving it to the parties to
come to an agreed-to fee amount, the Maryland Court determined
that a reasonable fee for time spent during the Relevant Period
would be (1) two attorneys' time at 80% of the time claimed, and
(2) paralegal time at 60% of the time claimed.  (Id. at 42-46.)
Thereafter, the parties agreed to an award of $191,560.92 for the

_____

    [23] Access to the take-home flyer program was the only issue
CEF raised on appeal because (1) MCSD had agreed to allow CEF
access to the other disputed fora, and (2) the Maryland Court
granted injunctive relief in favor of CEF, which allowed CEF
access to the other fora.  (Aden II Decl., at Ex. D, 4-5.)

    [24] The plaintiffs' remaining application for fees was stayed
pending the outcome of the appeal to the Fourth Circuit.  (Id.)

fees and costs during the Relevant Period.  (Aden II Decl., Ex.
B, unsigned draft of joint ord. in Maryland Action as to amount
of fees.)

The Maryland Court essentially disagreed with MCSD that the
plaintiffs had "cut and pasted" their briefs from the Stafford
case into that case.  (See Aden II Decl, Ex. D, 11-21-05 Tr. on
Motion for Attorney's Fees in Maryland Action, at 39 ("[The Court
was not] particularly persuaded that the New Jersey litigation is
something that was simply replicated in this court.").)  Stafford
has offered no proof of the duplication, but merely cites to the
MCSD's counsel's brief in opposition to fees.  (Defs. Br., at 26;
Johnson Decl., at ¶ 43 & Ex. N, 6-8-05 MCSD Opp. Br., at 24-25.)
The MCSD's brief cites to approximately 16 pages of alleged
"considerable duplication" in CEF's briefs to the Third Circuit
and to the Fourth Circuit.  (6-8-05 MCSD Opp. Br., at 25.)  Even
if the Court were to accept Stafford's argument as true, it has
not made any showing that the Center reused materials from the
Maryland Action in this case.

2.   Stafford's Arguments for Specific Reductions

a.   Excessive charges[25]

(1)  Oral argument preparation

       Stafford contends that the Center spent excessive time on
Adams's preparations for oral argument before the Court and the
Third Circuit.  (Defs. Br., at 30-31.)  Stafford calculates that
(1) Adams spent 30.75 hours and 100.60 hours preparing for
argument before the Court and the Third Circuit, respectively,
(2) other Center attorneys spent 12.37 hours "attending moot
courts, reviewing the file and attending District Court
arguments," and (3) other Center attorneys and staff spent an
additional 50.52 hours assisting Adams — including attendance at
7 moot courts — preparing for oral argument  (Id.)  CEF has not
specifically responded to this argument, but has argued that
"[w]ith regard to the moot courts, at least one of the moots was
with the U.S. Department of Justice, since [CEF] needed to
coordinate with the Department due to its participation in oral
argument."  (Pls. Reply Br., at 22.)

_____

       [25] To the extent that Stafford's opposition argues that CEF
"spent more time on . . . tasks than was reasonably necessary,"
the Court will analyze the claim and "weigh[], cut, and reduce[]
the claim."  Hall, 747 F.2d at 842.
       Stafford included in the Johnson Decl., under the list of
unreasonable and excessive charges, time the Center spent
collaborating with amici and working on the final judgment and
order.  (Johnson Decl., Exs. A & B).  However, Stafford did not
include in its brief any argument for the exclusion or reduction
of these hours.  Therefore, the Court has not addressed the hours
spent on these tasks.

"A reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court." <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 187 (3d Cir. 2001). Although the losing party is expected to pay for hours reasonably spent in the argument and its preparation under the fee shifting statute, the losing party does not have to pay for "excessive hours, or hours spent in learning or excessively rehearsing appellate advocacy." <u>Id.</u>  Generally, the Court will "assume that litigators have a baseline competency in oral advocacy that does not require such extensive rehearsal at the possible expense of an opposing litigant." <u>Planned Parenthood v. Att'y Gen.</u>, 297 F.3d 253, 269 (3d Cir. 2002).

Although Stafford claims that Adams spent 100.60 hours preparing for oral argument before the Third Circuit, the Court, after reviewing Adams's time entries, finds that he spent, at most, 70.6 hours preparing for this oral argument.[26]  The record indicates that Adams specifically identified spending 57.30 hours

---

[26] The time entries attached to the Johnson Decl. are different than the entries submitted to the Court.  Adams specifically cut approximately 33 hours of time spent preparing for oral argument before the Third Circuit and attending 3 moot courts.  (Pls. Appl., Ex. A, at 8.)

preparing for oral argument before the Third Circuit. However, as Stafford has pointed out, the Center's time entries lack specificity in some instances, and it is thus impossible to calculate exactly how many of Adams's — and the other Center's attorneys for that matter — hours were spent preparing for oral argument because some of the entries are compounded with no specific allotments provided to particular tasks.[27]

Although time records need not be kept by task, the Court cannot determine, as to some entries, the number of hours spent preparing for oral argument.  Therefore, "as to the entries that list multiple tasks or which lack the specificity necessary for the Court to determine whether the hours were expended in connection" with preparing for oral argument, the Court will also exclude those hours from the total.  See Apple Corps. Ltd. v. Int'l Collectors Soc'y, 25 F.Supp.2d 480, 487 & n.5 (D.N.J. 1998) (disallowing time spent where court could not determine time spent on non-compensable time because entries listed multiple tasks or lacked necessary specificity).[28]  For Adams, this amount of non-specific time totals 13.80 hours.  Adams also spent

_____

[27] For example, on August 21, 2003, Adams's time entry is as follows: "Preparing for oral argument; rev'd M-Oppose DOJ and resp. to 28(j) letter; e-mails w. DOJ re: response to motion." (Dkt. entry no. 55, Ex. A, Adams's time entries.)  Adams allots "4.10" hours to this work.

[28] For the remainder of the discussion, the Court applies this rationale to the Center's other time entries.

approximately (1) 15.65 hours preparing for the order to show cause hearing, (2) 15.10 hours preparing for the hearing on the motion for a preliminary injunction, and (3) 23.80 hours preparing for oral argument before the Court on the motion to enforce.[29]  As to hours billed by other attorneys in assisting Adams's preparation for oral argument before the Third Circuit and attending moot courts, the Court finds that (1) Colby spent, at most, 20.32 hours, (2) Baylor spent 1.0 hours, and (3) paralegal, Jesse Esbeck, billed 12.18 hours.[30]  Colby and Baylor also spent 2.52 and 1.60 hours, respectively, participating in a moot court with Adams on October 28, 2002, in preparation for argument before the Court on the preliminary injunction motion.[31]

The Court finds, in light of the decisions in <u>Planned Parenthood</u> and <u>Maldonado</u>, that the number of hours spent by Adams and other Center attorneys participating in moot courts and preparing for argument before the Court and the Third Circuit was excessive.  See <u>Planned Parenthood</u>, 297 F.3d at 269 (vacating

---

[29] The Court will address hours spent on the motion to enforce later in the opinion.

[30] Stafford's calculation also includes approximately 17.3 hours spent by James Davids, Esq. in preparing for the Third Circuit argument.  (Johnson Decl., Ex. B.)  However, Davids's billing statements were not included in the fee application.

[31] Stafford includes in its calculation of 12.37 hours spent by other Center attorneys, 8.25 hours billed by a paralegal, Carl Von Merz.  (Johnson Decl., Ex. B.)  However, CEF did not include Von Merz's billing statements for the Court's consideration.

award of fees for time spent preparing for argument, and explaining that "25.5 hours of moot court time seems excessive within the meaning of Maldonado. Even assuming that an oral argument is 30 minutes per side, 25.5 hours would enable a lawyer to practice his argument over 50 times"); Maldonado, 256 F.3d at 187 (finding that "[a] total of 169.35 hours in preparation for an oral argument on a single issue that had been tried, briefed, and argued in the District Court is unacceptable," and concluding that "24 hours for preparation for this oral argument, and two hours for attendance at oral argument, is fair and reasonable"). CEF has not attempted to justify the reasoning for the over-extensive preparation for all of these arguments.  Accordingly, the Court will reduce the amount of fees claimed for preparation for oral argument by all of the Center's attorneys and paralegals by 50%.

(2)  Tasks delegable to non-lawyer assistants

Stafford contends that the Center is "overreaching" in claiming $11,746 for "tasks which were easily delegable to non-professional assistants."  (Defs. Br., at 32.)  Stafford points out, as examples: (1) the "bulk" of Sullivan's work, valued at $1,575, consisted of simply hand-delivering filings to the district court, (2) Colby could have (a) delegated cite-checking assignments to paralegals, and (b) not supervised the filings of a facilities use application for the 2004-05 school year, and (3)

39

all of the tasks performed by paralegals Esbeck and Crist could have been handled by clerical staff.  CEF has only responded to Stafford's contention regarding Colby supervising the filing of a facilities use application.  CEF asserts that her participation was necessary because Stafford made the "process unnecessarily complicated . . . [by] forc[ing] CEF to change its meeting time and provide a list of participating students."  (Pls. Reply Br., at 22-23.)

As to the actions of local counsel, Sullivan, in hand-delivering documents to the Court for filing, these fees would generally not be compensable.  "[W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistan[ts], legal service rates are not applicable.  [A court] cannot condone the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals."  Halderman by Halderman v. Pennhurst St. Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995) (citations and internal quotations omitted).  Here, Stafford identifies three entries by Sullivan:

- • 9-19-02:  Preparation and filing of Order to Show Cause - 4.5 hours

- • 10-10-02: Review  of  discovery;  Hand  delivering brief for filing - 2 hours

- • 10-23-02: Drafting Certification of Service; Filing Brief with Court - 2 hours

(Defs. Br., at 32; Dkt. entry no. 63, at 47-48, Sullivan's time sheets.)  Although Stafford has identified the three particular

time entries as examples, as discussed above, the application and
Sullivan's supporting affidavit do not include any specific time
entries from Sullivan.  (Pls. Appl.; Sullivan Aff. & Ex. B,
billing statement.)  Sullivan's time entry sheet does not provide
the Court with any indication of the time Sullivan spent on any
particular task.  Instead, the time sheet merely provides the
total hours and fees incurred over every few months.  (Sullivan
Aff. & Ex. B.)  Sullivan's affidavit also does not incorporate by
reference the time entry sheets provided by Stafford, which is
the only information that possibly relates to Sullivan's
particular time spent.  Without this information, the Court
cannot award Sullivan fees or costs and cannot address Stafford's
argument.

To the extent that Stafford contends that Colby should have
delegated "cite-checking" to a non-lawyer, it has pointed out one
date of cite-checking on February 10, 2003, in which Colby spent
approximately 1.07 hours "[a]dding missing cites to argument;
citechecking."  (Defs. Br., at 32; Dkt. entry no. 55, at 10.)
Colby's time entry does not specify how much of her time was
spent cite-checking.  Nonetheless, the Court does not find the
approximately one hour of cite-checking to be excessive or
necessarily delegable to a non-lawyer.  Moreover, Colby's time
spent on August 23, 2004, assisting the filing of the use of
facilities form was not excessive.  Colby spent approximately 15

minutes on the task, and CEF has provided adequate justification for her participation.

The time spent by the Center's paralegals raises a different concern.  Stafford argues that, specifically with regard to paralegals Crist and Esbeck, their billed work was not only excessive, but was primarily clerical in nature, and therefore not compensable.  (Defs. Br., at 32-33, 42-43.)  Stafford references some of the specific instances of the Center's paralegals performing clerical tasks.  (Johnson Decl., at Ex. B.)  Stafford further claims that paralegal time is an overhead expense that should be absorbed by the Center.  (Id. at 43.)  Therefore, Stafford contends that the Court should eliminate the approximately 478.35 hours of time from consideration.  (Id.)  CEF has not addressed this contention.

Paralegal time devoted to clerical tasks is generally not reimbursable.  See Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at the paralegal rate, regardless of who performs them").  Stafford has noted several instances of clerical work performed by the Center's paralegals.  Some examples of such clerical or secretarial work include, inter alia:

By Lisa Crist

- 9-13-02:  Transcribing message from Bruce Wood -
  0.10 hours
- 10-03-02:  Mailing document to B. Wood - 0.26 hours
- 10-17-02:  Transcribing phone messages - 1.89 hours

42

- 01-09-03: Making travel arrangement for status conference with judge - 0.10 hours
- 02-13-03: Preparing letters and envelopes to be certified - 0.38 hours
- 03-26-03: Copying defendants' memo in opposition and third certification of exhibits to send to client; faxing and mailing documents - 0.89 hours
- 04-21-03: Creating [dividers] for appellate pleadings - 1.25 hours
- 05-07-03: Binding additional copies of brief - 1.01 hours

By Jesse Esbeck

- 07-30-03: Filing organizing appellate and correspondence folders - 3.75 hours
- 08-07-03: Filing and updating table of contents, mailing and faxing response to appellate court date to the court, Arthur Stein and G. Sullivan - 3.82 hours
- 08-11-03: Updating pleadings index - 2.02 hours
- 08-13-03: Reorganizing cases indexes - 4.76 hours
- 08-20-03: Filing + updating index - 1.07 hours
- 09-15-03: Listening to voicemail from Art Stein - 0.03 hours
- 09-29-03: Mailing complaint to Sullivan - 0.41 hours
- 10-05-04: Copy letter for KWC and copy to file - 0.21 hours

By Charles Barclay

- 10-15-04: Made labels for the Brief and Deposition Docume[n]ts - 0.28 hours
- 11-03-04: Working on pleadings index - 3.00 hours
- 11-05-04: Worked on Pleadings index - 4.58 hours
- 12-17-04: Faxed and mailed letter to U.S. District Court of NJ - 0.25 hours
- 01-03-05: Filed a document into correspondence section - 0.13 hours

By Jim Crowe

- 05-17-02: Sending letter to superintendent cert. mail - 0.34 hours
- 05-07-03: Mailing amended cert. of service - 0.15 hours

43

The Court finds that the record does not substantiate Stafford's assertion that <u>all</u> of the Center's paralegals performed secretarial or clerical work.  Instead, the Court finds that the Center's paralegals spent the following time on clerical tasks for which it will not be awarded fees: (1) Crist - 34.99 hours; (2) Esbeck - 53.3 hours; (3) Barclay - 18.88 hours; and (4) Crowe - 0.84 hours.  Therefore, a combined total of 108.01 hours will be reduced from the number of hours worked by paralegals.

b.   Redundant work and attorney staff duplication

Stafford contends that the Center "exhibits a consistent pattern of submitting amendments, supplements and other modifications to [its] filings."  (Defs. Br., at 33.)  Stafford identifies as examples of such "duplication" the "two amended complaints, four Certifications of Exhibits, the two motions for summary judgment that were never pursued as well as the amendment to th[e fee] application and the subsequent re-filings."  (<u>Id.</u> at 33-34.)  Stafford argues that work on these supplemental documents should be excluded from computation because the Center's "work in this case was, for many of its staff, simply a training ground at [Stafford's] expense."  (<u>Id.</u> at 34.)  Further, Stafford asserts that numerous attorneys and staff duplicated each other's work.  (<u>Id.</u>)  As such, Stafford argues that by its "conservative calculations," 163.51 hours or $36,851.15 should be excluded.  (<u>Id.</u> (citing Johnson Decl., Exs. A-C).)

44

CEF claims that "there is nothing inherently unreasonable" about having multiple attorneys handling the case. (Pls. Reply Br., at 24-25.) Also, CEF argues that Stafford has failed to "point to any specific time entries that [it] contend[s] are duplicative." (Id. at 26.) CEF also contends that the work, in particular, on the second amended complaint was not duplicative of the work on the initial complaint or first amended complaint. (Id.) Moreover, CEF points out that (1) the Center did not bill for the amended application for fees, and (2) the amended application included a reduction in the amount of claimed fees. (Id. at 26-27.)

The Court finds that Stafford has only supplied a conclusory statement that the Center's attorneys performed identical work, and has not identified any instance of the Center's attorneys performing the same work. Instead, Stafford points to only the various modifications or amendments to documents submitted by CEF. CEF did file, inter alia, two amended complaints in the case and four certifications of exhibits.[32] However, Stafford has not shown that such amendments or modifications to the pleadings or memoranda were frivolous or otherwise unnecessary. Therefore, the Court will not reduce the claimed fees for the filing of the amended or supplemental documents.

---

[32] The Court will address the motions for summary judgment later in the opinion.

45

c.   Unnecessary, abandoned, and unsuccessful work

Stafford asserts that "[a]ll of [CEF's] claims for fees relating to 'work' performed at the District Court level after this Court granted the [preliminary] injunction should be disallowed." (Defs. Br., at 35.)  In particular, Stafford argues that CEF should not be compensated for work on the (1) "unsuccessful" motion to enforce and/or sanction, (2) two "fruitless" summary judgment motions, (3) "monitoring" Stafford's administration of its policy, or (4) requesting public records pursuant to the Open Public Records Act ("OPRA").  (Id. at 35-36.)  Stafford claims that:

> (1)   For monitoring and OPRA requests - 75.64 hours and $12,964.25 are excludable;
>
> (2)   For the summary judgment motions - 198.81 hours and $50,352.05 are excludable; and
>
> (3)   For the motion to compel and/or sanctions - 256.02 hours and $64,000.65 are excludable.

(Id. at 35-38.)

(1)   Motion to enforce

Stafford characterizes CEF's motion to enforce as (1) vexatious, and (2) lacking any legal basis.  (Id. at 37-38.) Stafford argues that CEF should have "anticipated that closure of the fora was a valid legal option available" to it.  (Id. at 38.) CEF claims that the Court should not exclude time spent on "unsuccessful" claims based on the decision in Hensley.  (Pls. Reply Br., at 20.)  CEF further argues that "the mere fact that

46

[the] Motion to Enforce the Preliminary Injunction was unsuccessful . . . does not require this Court to reduce [CEF's] fee award." (Id. at 21-22.)

The Court should not reduce a fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435. Also, a court should not exclude time spent on claims involving a "common core of facts" or that are "based on related legal theories." Id. However, "a court is to consider the amount of time plaintiff's counsel has spent on unsuccessful claims in determining the appropriate attorneys' fees award." Abrams, 50 F.3d at 1222.[33]

CEF claims that the "motion was a good faith effort by [it] to secure the access granted by the preliminary injunction and was necessitated by [Stafford']s move to close the fora." (Pls. Reply Br., at 22.) CEF further argues that it was not "useless" or "frivolous," and points out that "it was only as a result of the [motion] that [CEF was] granted leave to amend [the amended complaint] to put in the record [Stafford's] actions after entry of the injunction." (Id.) The Court finds that the hours devoted to the motion to enforce are sufficiently separable from the remainder of the litigation to warrant the deduction of all fees spent on the motion.

---

[33] The Court recognizes that time spent on unsuccessful claims is ordinarily addressed as part of the reduction of the lodestar. Nonetheless, the Court will address the contentions regarding this motion here.

Although the Third Circuit affirmed the Court's grant of a preliminary injunction and ordered the entry of permanent injunctive relief, the Third Circuit's ruling dealt with the status of CEF's access to the contested fora no later than December 10, 2002.  At that time, the Court had ordered Stafford to take no action that would prevent CEF from having equal access to the fora.  (12-10-02 Mem. Op. & Ord.)  However, Stafford determined that it was closing the permitted fora on or about December 12, 2002.  As CEF admitted both at oral argument and in its briefs in support of the motion for preliminary injunctive relief, Stafford "may further limit its fora, as to all affected groups including CEF, if it chooses to do so."  CEF, 233 F.Supp.2d at 667 n.23.[34]  Despite having acknowledged that Stafford could constitutionally close the fora, CEF brought the motion to enforce.  The Court denied the motion in almost all respects, except to allow CEF to file a second amended complaint.

The Court has discretion in fashioning "a reasonable fee, to disallow any fees for time spent litigating the case after the last benefit is won from the defendant, because the expenditure of such time is equivalent to expending time litigating particular claims that are unrelated to the relief ultimately

_____

[34] See also 10-29-02 Tr., at 25 ("[O]bviously government never has an obligation to open a forum.  It's only when it opens the forum that this viewpoint discrimination becomes a problem. So they can certainly close a forum and we would certainly not deny that.")

obtained, for which Hensley directs a disallowance of fees."
Rode, 892 F.2d at 1186.  As in Rode, the Court finds that this
rationale applies to disallow fees spent on the motion to enforce
even though the Third Circuit had not yet directed the entry of
permanent injunctive relief.  The time spent on the motion was
unrelated to any relief ultimately obtained by CEF.  CEF has not
argued, and could not demonstrate, that the motion had an effect
on the entry of permanent injunctive relief.  The Court granting
CEF the opportunity to file a second amended complaint, which
included allegations and facts occurring after December 10, 2002,
also did not contribute to any favorable result achieved in the
litigation because the entry of the permanent injunction
terminated the litigation.

     As to the number of hours the Center's attorneys spent
working on the motion to enforce, the Court has reviewed the
submitted time sheets and finds that Adams spent 130.20 hours
working on the motion.  Out of this total, he specifically
identified working on the motion to enforce for 63.70 hours, of
which 33.40 hours were spent preparing for and attending oral
argument on the motion.  Adams also included commingled and non-
specific time totaling an additional 34.0 hours.  As for other
Center attorneys and staff, Colby spent a total of 74.94 hours on
the motion to enforce, with 58.19 hours being specifically
identified and 16.75 being intermingled with various other

entries.   Baylor spent 1.7 hours discussing or working on the
motion to enforce.   Also, paralegals Crist and Esbeck spent 19.55
hours and 2.20 on the motion respectively.   These hours will be
deducted from the lodestar.

(2)   Motions for summary judgment

Stafford argues that the Court should also disallow any fees
claimed for the "ineffectual" and "fruitless" motions for summary
judgment.   (Defs. Br., at 35-36.)   CEF claims, <u>inter</u> <u>alia</u>, that
simply because the motions for summary judgment were "never
used," this does not require the Court to reduce the fee award.
(Pls. Reply Br., at 20-21.)

The Court notes that a motion for summary judgment was filed
on February 25, 2003, approximately 1 1/2 months after the filing
of the notice of appeal from the preliminary injunction.   (Dkt.
entry no. 30.)   The Magistrate Judge had also scheduled a status
conference with the parties — on the same date that the motion
was submitted for filing — to set a fact discovery deadline for
September 30, 2003.   (Dkt. entry no. 33, 3-3-03 Ltr. from A.
Stein re: 2-25-03 status conf.)   Thus, the motion was at best,
premature.   CEF voluntarily withdrew the motion via letter the
same day that it was filed, although the letter was not received
until 3 days later.   (Dkt. entry no. 32.)   Stafford asserts that
CEF served it with a second motion for summary judgment, but the
record does not indicate that it was ever filed with the Court.
(Defs. Br., at 36.)

50

The Court finds no basis to permit an award in an amount for work spent by the Center on the motions for summary judgment.  In this regard, CEF's reliance on <u>Blum v. Witco Chemical Corp.</u>, 829 F.2d 367 (3d Cir. 1987), and <u>Planned Parenthood</u>, is misplaced. In <u>Blum</u>, the non-prevailing party had generally objected to "hours billed in connection with unsuccessful motions and <u>depositions</u> that were never used at trial."  829 F.2d at 378. The Third Circuit explained that "[t]he mere failure of certain motions or the failure to use depositions is insufficient to warrant a fee reduction under <u>Hensley</u>."  <u>Id.</u>  The <u>Blum</u> court did not address work spent on motions for summary judgment that were not used in the case.  An unused motion for summary judgment is not comparable to a deposition, taken for the purposes of attempting to gather information reasonably likely to lead to the discovery of admissible evidence, that is eventually unused.

The Third Circuit in <u>Planned Parenthood</u> did address a contention that the district court erred in awarding "123.8 hours spent preparing a summary judgment motion that was never accepted for filing and was never considered on the merits."  297 F.3d at 271.  However, CEF has omitted the rest of the court's analysis. The Third Circuit further explained that

> [t]he District Court concluded that this time was compensable since the plaintiffs "relied" on their summary judgment brief, upon order of the District Court, instead of filing a post-trial brief, which made the work on the motion "necessary," "successful," and "useful." We conclude that the District Court did not abuse its

> discretion in determining that these hours were compensable and that its explanation was clear, concise, and, therefore, sufficient.  Since the summary judgment brief was eventually submitted in lieu of a pre-trial brief, and a post-trial brief, the work was certainly "necessary" and "useful," and we therefore affirm the award of fees.

Id.  The district court specifically indicated that the award of fees spent on the unfiled summary judgment motion was based on the work being "necessary" and "useful."  Id.  The prevailing party in that case had actually submitted the summary judgment brief in lieu of a pre-trial brief and post-trial brief.  Id.

CEF has not argued or otherwise made any showing that its motion for summary judgment was "necessary" or "useful," or otherwise related to the success it achieved in the case.  In fact, as CEF has pointed out, it "acquired [the relief] without the need to use the motion for summary judgment." (Pls. Reply Br., at 30.)  The Court will deduct any fees spent on the motions for summary judgment from the lodestar.  The motions were not necessary or useful, or otherwise related to the success achieved in the case.

As to the number of hours the Center's attorney spent working on the motions for summary judgment, the Court has reviewed the submitted time sheets and finds that Adams spent 121.05 hours.  Out of this total, he specifically identified working on the motions for summary judgment for 86.85 hours.  Similar to the motion to enforce, the Court, as to entries that

list multiple tasks or lack the necessary specificity to
determine whether the hours were expended with the motion for
summary judgment, the Court will disallow those hours.  For
attorney Adams, this total amounts to 34.20 hours.[35]  Colby
specifically identified working on the motions for summary
judgment for 17.91, and included non-specific entries totaling
24.87 hours.  Baylor spent 0.40 hours working on the motions.
Paralegals Crist and Esbeck spent 5.55 and 10.64 hours on the
motions, respectively.

(3)  Monitoring Stafford's policy & OPRA requests

     Stafford also contends that the Court should eliminate the
Center's time spent monitoring its policy and making OPRA
requests.  (Defs. Br., at 36.)  Although CEF has not specifically
responded to this objection, the Court finds that Stafford has
not articulated any basis for the exclusion of these fees.
Therefore, the Court will not deduct for time spent on monitoring
Stafford's implementation of its policies or otherwise submitting
public records requests.

---

[35] For example, on July 28, 2003, an entry reads as follows:
"Drafting 28(j) letter; drafting confirmation of hearing letter
to court; drafting memo in support M/SJ [(Motion for Summary
Judgment)]."  Adams bills 6.50 hours for this work.  Here, the
work on the 28(j) letter and drafting the confirmation of hearing
letter would be otherwise recoverable, but the work on the motion
for summary judgment is not compensable.  However, the record
does not indicate how many hours of the 6.50 hours were devoted
to the motion for summary judgment and how many hours were
devoted to drafting the two letters.

d.   The Center's work before September 19, 2002

Stafford "believe[s] that [the Center] was not retained by CEF until just before the Order to Show Cause was filed on September 19, 2002." (Defs. Br., at 38.)  Stafford argues that this time is not recoverable.  (Id.)  The Court finds that, although the Center's billing records indicate that a formal retainer agreement was not drafted until September 17, 2002, the Center was working on behalf of CEF from at least March 2002. There is nothing in the record indicating otherwise.  As such, the time spent by the Center prior to the Order to Show cause filed on September 19, 2002, is recoverable.

**B.   Summary Calculation of Hours Reasonably Expended**

Based on the foregoing discussion, the lodestar calculation of hours reasonably expended by CEF's counsel is as follows.[36]

| Counsel | Claimed Hours | Hours Disallowed | Total Lodestar hours |
|---------|---------------|------------------|----------------------|
| Mr. Adams | 678.29 | 269.67[37] | 408.62 |

---

[36] As explained supra, the Court has not considered any work performed by Sullivan.  He had claimed 47.10 hours for a fee of $11,166.73.

[37] This represents (1) 15.37 hours deducted for excessive time spent preparing for argument at the district court, (2) 121.05 hours deducted on the motions for summary judgment, (3) 97.70 hours deducted on the motion to enforce, and (4) 35.55 hours deducted for excessive time spent preparing for argument before the Third Circuit.

| | | | |
|---|---|---|---|
| Ms. Colby | 391.61 | 129.14[38] | 262.47 |
| Mr. Baylor | 17.20 | 3.40[39] | 13.80 |
| Mr. Aden | 13.30 | 0 | 13.30 |
| <u>Paralegal</u> | | | |
| Ms. Crist | 227.32 | 60.09[40] | 167.23 |
| Mr. Esbeck | 155.75 | 71.23[41] | 84.52 |
| Mr. Barclay | 20.46 | 18.88[42] | 1.58 |
| Mr. Crowe | 4.19 | 0.84[43] | 3.35 |

**TOTAL LODESTAR HOURS**

---

[38] This represents (1) 42.78 hours deducted on the motions for summary judgment, (2) 74.94 hours deducted on the motion to enforce, (3) 10.16 hours deducted for excessive time spent preparing for argument before the Third Circuit, and (4) 1.26 hours deducted for excessive time spent preparing for argument before the Court on the motion for a preliminary injunction.

[39] This represents (1) 0.40 hours deducted on the motions for summary judgment, (2) 1.70 hours deducted on the motion to enforce, (3) 0.50 hours deducted for excessive time spent preparing for argument before the Third Circuit, and (4) 0.80 hours deducted for excessive time spent preparing for argument before the Court on the motion for a preliminary injunction.

[40] This represents (1) 5.55 hours deducted on the motions for summary judgment, (2) 19.55 hours deducted on the motion to enforce, and (3) 34.99 hours deducted for non-compensable clerical work.

[41] This represents (1) 10.64 hours deducted on the motion for summary judgment, (2) 2.20 hours deducted on the motion to enforce, (3) 53.30 hours deducted for hours spent on clerical work, and (4) 5.09 hours spent preparing for oral argument before the Third Circuit.

[42] This represents time spent on clerical work.

[43] This represents time spent on clerical work.

Accordingly, the Court finds that the total hours reasonably expended by CEF's counsel for purposes of the lodestar calculation is 954.87.  The Court must next determine the appropriate hourly rates, and then turn to the matter of any post-lodestar adjustments.

## C.   **Reasonable Hourly Rate**

Generally, "a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035; see Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984) (stating fees "under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel").  "When attorney's fees are awarded, the current market rate must be used.  The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed." Lanni, 259 F.3d at 149.

The Court "may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." Coleman v. Kaye, 87 F.3d 1491, 1510 (3d Cir. 1996).  In this regard, "[t]he plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." Smith, 107 F.3d at 225.  This burden must be met by way of

satisfactory evidence, "in addition to [the] attorney's own affidavits," that the requested hourly rates meet the required standard. <u>Washington</u>, 89 F.3d at 1035 (quoting <u>Blum</u>, 465 U.S. at 895 n.11). "Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence. In the absence of such evidence, the plaintiff must be awarded attorney's fees at her requested rate." <u>Smith</u>, 107 F.3d at 225 (citations omitted).

"The value of an attorney's time generally is reflected in his normal billing rate." <u>Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161, 167 (3d Cir. 1973); <u>see also</u> <u>Gulfstream III Assocs. v. Gulfstream Aerospace Corp.</u>, 995 F.2d 414, 422 (3d Cir. 1993); <u>SPIRG</u>, 842 F.2d at 1445. "[C]ounsel who possess or who are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed. Thus, the quality of an attorney's work in general is a component of the reasonable hourly rate[.]" <u>Baughman v. Wilson Freight Forwarding Co.</u>, 583 F.2d 1208, 1217 (3d Cir. 1978) (citation omitted). For example, "counsel who bill at a high rate should take fewer hours to do the work[,]" and the "ministerial nature" of certain duties "should command a lower rate[.]" <u>Bell</u>, 884 F.2d at 715; <u>see also</u> <u>Loughner</u>, 260 F.3d at 180 (reversing fee award for failure of district court to reduce attorney's claimed maximum rate for

tasks effectively performed by assistants, paralegals, or secretaries).  As previously noted, in making this inquiry, the Court must assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  <u>Blum</u>, 465 U.S. at 895 n.11.

CEF's claimed attorney's fee figure is based upon hourly rates of $275.00 for attorneys from the Center, and $225.00 for Gregory J. Sullivan, Esq.  (Pls. Appl., at ¶ 6; Baylor Decl., at ¶¶ 23-24.)[44]  CEF's fee application is supported by declarations by the Center's counsel stating that it was the usual and customary rate when the services were performed.  (<u>See</u> Baylor Decl., at ¶¶ 23-24; Colby Decl., at ¶ 15; Aden Decl., at ¶ 14; Adams Decl., at ¶ 13; Sullivan Decl., at ¶ 4.)  In addition, CEF has submitted affidavits by attorneys Paulsen and Daily attesting to the reasonableness of the fees.  (<u>See</u> Paulsen Decl., at ¶ 5, 8 (as to attorneys Baylor, Colby, Aden, and Adams); Daily Decl., at ¶ 9, 11 (as to attorneys Baylor, Colby, Aden, Adams, and Sullivan, as well as paralegals Crist, Esbeck, Barclay, and Crowe).)  Stafford takes issue with respect to (1) the $275.00 rate as claimed for the Center's attorneys, and (2) the $60.00

_____

[44] Mr. Baylor's submission also describes services rendered by four paralegals from the Center.  The claimed hourly rate for the paralegals is $60.00.

rate as claimed for the Center's paralegals.  (Defs. Br., at ¶

40.)  The Court will address each of these contentions.

1.  The Hourly Rate for the Center's Attorneys

Stafford argues that the $275.00 hourly rate claimed for the

Center's attorneys is unreasonable because (1) the relevant legal

community is not Washington, D.C., but New Jersey, and (2) the

$225.00 hourly rate is a reasonable one for senior counsel in

southern New Jersey.

The Court must first define the relevant market to determine

the market rate.  PIRG, 51 F.3d at 1186.  The Court applies the

"forum rate" rule when determining the relevant market rate.

Honeywell Int'l, 426 F.3d at 705.  This rule defines the relevant

market, in most cases, as the prevailing rate in the forum of the

litigation.  Id.  However, the Court may award attorney's fees

based on the prevailing rates in the community in which the

prevailing party's attorneys practice if the party can show (1)

the need for "the special expertise of counsel from a distant

district," or (2) local counsel were unwilling to handle the

case.  Id. (citations omitted).

CEF contends that the $275.00 hourly rate is reasonable and

appropriate for attorneys of comparable qualifications and

experience in the New Jersey legal market and the Washington,

D.C. legal market.  (Pls. Br., at 7.)  Also, CEF argues that the

$275.00 hourly rate is "actually lower than the rates established

by the Civil Division of the United States Attorney's Office for civil litigators in the Washington, D.C. area market (where counsel's offices are located)." (Id. (emphasis in original).) The Court does find that the record provided by CEF — including the declarations of attorneys Baylor, Colby, Aden, Adams, and Paulsen — demonstrates that the Center's attorneys do have particular expertise in the area of "religious freedom litigation" and "equal access cases." CEF has also shown that it needed the special expertise of counsel from a distant district to justify applying the prevailing rates in Washington, D.C.[45]

CEF has submitted the declaration of Bruce Wood ("Wood"), director of program development for CEF, with its application for fees. (Dkt. entry no. 66, 1-13-06 Wood Decl. ("Wood Decl.").) Wood states that "[w]hen [he] decided to retain an attorney to represent CEF[] in this matter, [he] searched the Internet to find a law firm with a national reputation and extensive experience handling similar religious liberty cases." (Id. at ¶ 2.) He claims that the "only two organizations [he] found that

_____

[45] CEF has not made any showing to satisfy the second element needed to establish the relevant market as Washington, D.C. CEF has not demonstrated that local counsel were unwilling to handle the case. Instead, CEF only briefly mentions this issue in its argument in support of an upward enhancement of the lodestar calculation. (Pls. Br., at 13-14.) CEF states that "[a]part from the intervention of the [Center], it would have been difficult, if not impossible, for [CEF] to find ready, willing and able attorneys in New Jersey . . . to become involved in such an unpopular action against a school district." (Id. at 13.)

met both these criteria were the Alliance Defense Fund and the [Center]." (Id. at ¶ 3.) Wood also asserts that "[his] search did not turn up any law firms in New Jersey with the national reputation and level of expertise in handling religious liberty cases that [he] desired and believed was necessary." (Id. at ¶ 4.) Finally, he states that "[he] ultimately chose to retain the [Center] because of its extensive experience with equal access cases similar to this one and its long history of handling cases for various [CEF] chapters across the country." (Id. at ¶ 6.)

Stafford argues that the Center was not "needed" because "[(1)] there are plenty of civil rights attorneys and a multitude of law firms in New Jersey which specialize in religious expression cases as indicated by a review of Martindale-Hubbell; and [(2)] local counsel, [Sullivan], was obviously willing to handle the case." (Defs. Br., at 41-42.) While there are possibly a number of other law firms in New Jersey that handle religious expression cases, CEF has provided sufficient evidence that it (1) searched for firms in New Jersey with the ability to handle this case, and (2) was unable to find attorneys with the Center's extensive experience with equal access cases. As this case dealt specifically with equal access issues, it is reasonable to infer that the Center was needed to represent CEF. Accordingly, the Court will allow the hourly rate of $275.00 to

be included in the lodestar calculation.[46]

2.   The Hourly Rate for the Center's Paralegals

Stafford contends that the Center "has not provided any evidence to support its position that 'paralegal' time is a customary charge to a client as opposed to an overhead expense which should absorbed by the firm."  (Defs. Br., at 43.)  Thus, Stafford argues that the Court should disallow all of the time billed by the Center's paralegals.  (Id.)  The Court finds that the $60.00 per hour rate for the Center's paralegals is a reasonable rate, and will apply that rate to the lodestar.

Stafford has not provided any basis for the Court to determine that paralegal time is customarily included as an overhead expense.  The only support it provides for this statement is the statement by counsel for the plaintiffs in Wigg, indicating that his organization customarily absorbed paralegal time as an overhead expense.  (Id.)  As described supra, paralegal time is properly recoverable by prevailing parties. Therefore, the Court will not exclude all of the time spent by

---

[46] The Court further finds that, even if the applicable market was the New Jersey legal market and the forum rate applied, Stafford has failed to show that $275.00 is an unreasonable fee.  CEF has submitted a declaration from attorney F. Michael Daily, stating that the hourly rate of $275.00 for attorneys Adams, Colby, Baylor, and Aden, is reasonable for "attorneys of comparable experience in the central and southern New Jersey legal market[s]."  (Daily Decl., at ¶ 9 (emphasis added).)  Stafford has submitted only a declaration from its counsel, Mr. Stein, supporting the contention that $275.00 is an unreasonable hourly rate.

the Center's paralegals.

## III. Adjustments to the Lodestar Figure

CEF seeks an upward adjustment in the lodestar figure,
arguing that an enhancement factor of 1.25 is appropriate because
of (1) the unpopularity of the issues presented, (2) the degree
of success, and (3) "the reasonable period of time in which
counsel litigated the case to a favorable conclusion." (CEF Br.,
at 13-14.)   Stafford, on the contrary, seeks a downward
adjustment of 75% in the lodestar figure because (1) CEF did not
obtain the primary relief it sought — requiring Stafford to
distribute, post, or display its flyers in the elementary school
fora; (2) CEF's "bad billing judgment" in not submitting its
bills in a manner to allow the Court to properly identify
distinct claims; and (3) Stafford's students would be negatively
impacted without a significant reduction because of the
"constraints imposed by S.1701." (Id. at 48-57.)

## A.   CEF's Claim for an Upward Adjustment

The Court, generally, may adjust the lodestar upward for (1)
"delay in payment whether by application of current rather than
historic hourly rates or otherwise[,]" (2) quality of
representation but "only in very rare circumstances where the
attorney's work is so superior and outstanding that it far
exceeds the expectations of clients and normal levels of

63

competence[,] or (3) "the necessity of attracting competent counsel." Rode, 892 F.2d at 1184 (citations and quotations omitted). This third adjustment is called a "contingency multiplier and is to be granted only in rare cases." Id.[47]

CEF arguably contends that the Court should award an upward enhancement of the lodestar based on the contingency nature of the case. However, contingency multipliers are not permitted for fees awarded pursuant to fee shifting statutes — such as Section 1988. Dague, 505 U.S. at 566-67; see Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 677 (3d Cir. 2002) (affirming, based on Dague, magistrate judge's dismissal of upward contingency multiplier).[48] Because CEF's fee request is based on a federal statute — Section 1988 — the Court cannot award a contingency multiplier in this case.

The Court also does not find that CEF's representation made

---

[47] The Court, as CEF has not alleged any delay in payment, addresses only the second and third forms of upward adjustments.

[48] Other Circuit Courts of Appeals have held, based on Dague, that fee enhancements pursuant to federal fee-shifting statutes — including Section 1988 — are not allowable. See Gates v. Deukmejian, 987 F.2d 1392, 1403 (9th Cir. 1992) (reversing, on basis of Dague, fee enhancement awarded under Section 1988); Wolfel v. Morris, 972 F.2d 712, 720 (6th Cir. 1992) (same); see also Murphy v. Reliance Standard Life Ins. Co., 247 F.3d 1313, 1315 (11th Cir. 2001) (reversing, on basis of Dague, fee enhancement awarded pursuant to ERISA fee-shifting provision); Elmore v. Cone Mills Corp., 23 F.3d 855, 863 n.8 (9th Cir. 1994) (same); Eirhart v. Libbey-Owens-Ford Co., 996 F.2d 846, 852 (7th Cir. 1993) (reversing, on basis of Dague, fee enhancement awarded pursuant to Title VII fee-shifting provision).

this one of those very "rare case[s] where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" Blum, 465 U.S. at 899 (citing Hensley, 461 U.S. at 435).  Accordingly, the Court will not apply the 1.25 enhancement requested by CEF.

**B.   Stafford's Request for a Downward Adjustment**

Stafford contends that the Court should apply a downward adjustment to the lodestar fee of 75% because (1) CEF did not obtain the primary relief sought, (2) CEF exercised bad billing judgment, and (3) a significant award of fees would negatively impact Stafford's students.  (Defs. Br., at 48-58.)  The Court finds that none of the above reasons warrants a further downward adjustment of the lodestar figure.

1.   CEF's Success

Stafford argues that CEF did not obtain the primary relief sought.  (Id. at 48.)  Stafford points out that CEF sought to have it post its flyers in the elementary school fora.  (Id. at 49.)  Thus, because CEF did "not ultimately succeed in its primary goal of penetrating the fora by distributing, posting and displaying its flyers at any of the four elementary schools involved, a 75% downward adjustment is warranted."  (Id.)  CEF argues, as it does in support of its argument for an upward

enhancement, that it achieved "all the relief . . . requested in the[] Complaint -- a declaratory judgment, a permanent injunction, nominal damages, and a recognition of a right to an award of fees and costs."  (Pls. Reply Br., at 30.)

CEF's rights were adjudicated in its favor at the preliminary injunction hearing and when the Third Circuit directed the entry of a permanent injunction on its claims. Although CEF was not able to distribute the flyers because of the New Policy, Stafford modified the policy after the preliminary injunction was entered, and the Court does not find CEF's inability to distribute the flyers pursuant to the New Policy to be a failure to obtain legal relief.  Therefore, a downward reduction of 75% is not warranted.

2.   Alleged Bad Billing Judgment

Stafford argues that the Center's "bad billing judgment" warrants a drastic reduction in the lodestar.  The Court has previously addressed Stafford's argument on this issue earlier in the opinion.  Accordingly, the Court finds that a 75% downward adjustment is not warranted.

3.   Stafford's Financial Constraints

Stafford asserts that the budgetary constraint imposed on it by S-1701 requires the Court to reduce CEF's fee award.  (Defs. Br., at 52-57.) Stafford contends that "the probable effects of a significant award to [the Center] will include a layoff of teachers, increasing class sizes, and discontinuing busing of

66

students in hazardous-route areas."  (Id. at 57 (citing Ronald L.

Meinders Decl., at 4).)  Although the Court acknowledges that any

attorney's fees award in the case will have a potential negative

impact on the budget of Stafford, a downward reduction is not

warranted.

A losing party's financial ability to pay is not a "special

circumstance" or "relevant consideration" in determining an award

of fees.  See Inmates of Allegheny County Jail v. Pierce, 716

F.2d 177, 180 (3d Cir. 1983) (concluding that party's ability to

pay is not a "special circumstance," whether that party is a

public or private entity).  Although the Court is sympathetic to

Stafford's financial condition, "many defendants in civil rights

cases are public entities, facing the same budgetary constraints

as the school system in this case – a scenario Congress

contemplated when passing [Section] 1988." Coppedge v. Franklin

County Bd. of Educ., 345 F.Supp.2d 567, 570 (M.D.N.C. 2004).

Accordingly, other than the specific deductions described above,

the Court declines any further downward adjustment in the

lodestar figure.

**IV.  Conclusion**

Based upon the foregoing discussion and rulings, the Court

will award CEF an attorney's fee of $207,678.05, costs and

expenses of $2,056.65, calculated as follows:

Attorney's Fee

Hours claimed as to:
```
        (a)   Attorney Adams                678.29 hr.
        (b)   Attorney Colby                391.61 hr.
        (c)   Attorney Baylor                17.20 hr.
        (d)   Attorney Aden                  13.30 hr.
        (e)   Attorney Sullivan              47.10 hr.
        (f)   Paralegal Crist               227.32 hr.
        (g)   Paralegal Esbeck              155.75 hr.
        (h)   Paralegal Barclay              20.46 hr.
        (i)   Paralegal Crowe                 4.19 hr.
Subtotal: hours claimed                    1,555.22 hr.
```

Less amounts disallowed:
```
        (a)   Attorney Adams                269.67 hr.
        (b)   Attorney Colby                129.14 hr.
        (c)   Attorney Baylor                 3.40 hr.
        (d)   Attorney Aden                   0.00 hr.
        (e)   Attorney Sullivan              47.10 hr.
        (f)   Paralegal Crist                60.09 hr.
        (g)   Paralegal Esbeck               71.23 hr.
        (h)   Paralegal Barclay              18.88 hr.
        (i)   Paralegal Crowe                 0.84 hr.
Subtotal: hours disallowed                  600.35 hr.
```

```
Total claimed hours allowed:                954.87 hr.

Total hours at attorney rate ($275.00)           698.19
     Multiplied by rate                     x $     275.00
Subtotal for hours at $275.00 per hour        $192,002.25

Total hours at paralegal rate ($60.00)           256.68
     Multiplied by rate                     x $      60.00
Subtotal for hours at $60.00 per hour        $ 15,400.80
```

**TOTAL ATTORNEY'S FEE**                     $207,403.05

Costs and Expenses

Amounts claimed as to:
```
        (a)   The Center                    $  2,056.65
        (b)   Attorney Sullivan             $    545.69
Subtotal: costs and expenses claimed        $  2,602.34
```

Less amounts disallowed as to:

```
           (a)  The Center                    $        0.00
           (b)  Attorney Sullivan             $      545.69
Subtotal: amounts disallowed                  $      545.69

Total claimed costs and expenses allowed as to:
           (a)  The Center                    $   2,056.65
           (b)  Attorney Sullivan             $        0.00
```

**TOTAL  COSTS  AND  EXPENSES**                  $  2,056.65

**TOTAL  COUNSEL  FEE  AND  COSTS**              $209,459.70

The total amount of attorney's fees, costs, and expenses awarded to CEF on this application is therefore $209,459.70.  The Court will issue an appropriate order and judgment.

                              s/ Mary L. Cooper
                         **MARY  L.  COOPER**
                         United States District Judge